**Opinion issued August 31, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00447-CR

———————————

**JORGE RODRIGUEZ-PORTILLO AKA JORGE ABRA AKA WILFREDO RODRIGUEZ PORTILLO AKA WILFREDO PORTILLO AKA WELFREDO PORTILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 89080-CR**

---

## MEMORANDUM OPINION

A jury found appellant, Jorge Rodriguez-Portillo, also known as Jorge Abra, also known as Wilfredo Rodriguez Portillo, also known as Wilfredo Portillo, also known as Welfredo Portillo, guilty of the felony offense of driving while intoxicated

("DWI"),[1] third offense. After appellant pleaded true to the allegations in two enhancement paragraphs that he had twice been previously convicted of felony offenses, the jury assessed his punishment at confinement for forty-four years and a fine of $100. In his sole issue, appellant contends that the evidence is legally insufficient to support his conviction.

We modify the trial court's judgment and affirm as modified.

## Background

Debra Dufrene testified that on November 4, 2019, she left work at about 4:30 p.m. and drove home on farm-to-market road[2] ("FM") 2004 toward Richwood, Texas in Brazoria County.[3] As she drove on FM 2004, at about 5:30 p.m., she saw a car sitting in a private driveway to her left. The car was stopped. Dufrene thought that the car would wait for her to pass, but the car pulled out in front of her car. Dufrene "slammed on [her] brakes," but had to maneuver her car into the oncoming traffic lane to avoid hitting the car. Dufrene was able to "get around" the car, and she drove in front, with the other car following behind her. Dufrene continued to pay attention to the car, watching it in her rearview mirror, because "[i]t was scary."

---

[1] *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b).

[2] A farm-to-market road is a local road that is not part of the state or interstate highway system. *See* TEX. AGRIC. CODE ANN. § 143.101.

[3] Former Richwood Police Department ("RPD") Officer C. Mayfield testified that the roadway on which Dufrene was driving was a "public place where people travel on."

2

As she watched the car, she saw it swerving a lot.  The car went "over the line" into the oncoming traffic lane.  Dufrene "could tell something was wrong."

At the traffic light at FM 2004 and FM 523, the car looked like it was going to turn left because it was in the left-hand turn lane.  The car had its windshield wipers on and its "blinkers turning different ways," which indicated to Dufrene that "something was wrong" because the weather did not require the use of windshield wipers.  Because the car was next to Dufrene's car at the traffic light, Dufrene was able to see a man, by himself, inside the car.  Dufrene thought that the man may have been intoxicated because he had been swerving while driving and was unable to use his blinker correctly.

When the traffic light turned green, the car did not turn left.  Instead, it drove in front of Dufrene's car, which was in the lane next to it.  Dufrene then used the camera on her cellular telephone to record the car's driving.  The car continued swerving.  At one point, the car almost "ran [another car] off" the roadway.  Next, the car "almost sideswiped" another car that was in the oncoming traffic lane.  The car then "overcorrected and went off into [a] ditch" to the right of the roadway.  The car "went off pretty far" into the ditch to "where [it was] grassy" and got stuck.  The area around where the car went off the roadway was a big field; there were no houses nearby.

3

Dufrene then pulled her car off onto the shoulder of FM 2004. She saw the driver of the car get out. The driver was a Hispanic male, who was wearing "cutoff shorts." There were not any other people in the car with him. The driver had "[w]et pants" and was staggering as he walked. He had his cellular telephone in his hand and was waving it and stumbling around. Dufrene called for emergency assistance and sat in her car.

At some point, the driver started stumbling toward Dufrene's car, but she just moved her car further away from the driver, and he went back toward his car. Dufrene did not see anyone come to the scene to pick the driver up, and she also did not see another car stop, and a person exit and "just start wandering around the ditch." Dufrene also did not see "another random person wandering around" the area that evening.

According to Dufrene, between the time the driver drove his car into the ditch and the time law enforcement officers arrived, the driver never left the scene with anyone else. When law enforcement officers arrived, Dufrene told them what had happened and that she had made sure that no one had picked up the driver. When officers asked where the driver was, Dufrene told them, "[h]e's got to be down there somewhere." Dufrene left the scene before law enforcement officers found the driver.

4

Dufrene testified that she believed that the person she saw driving the car on November 4, 2019 was intoxicated because of the way he was driving and because he was stumbling around when he got out of his car. He also had wet pants indicating that he had urinated or spilled a drink on himself. Dufrene stated that she was certain that no one else came to the scene other than law enforcement officers that evening.

During Dufrene's testimony, a copy of the videotaped recording from her cellular telephone from the evening of November 4, 2019 was admitted into evidence. On the videotaped recording, the car driving in front of Dufrene can be seen swerving inside its own traffic lane and crossing the yellow line into the oncoming traffic lane. At one point, the car swerves left into the oncoming traffic lane and nearly hits another car. The car then swerves back right and off the roadway into the grass.

The trial court also admitted into evidence Dufrene's calls for emergency assistance on November 4, 2019. In her first call, Dufrene gives her location and states that "there is a guy in a ditch" on the right side of FM 2004 going toward Richwood. Dufrene explains that "he almost ran [her] off the road." The driver went "all over the road" and finally "[went] off into the ditch." He almost hit other cars "head-on." In her second call, Dufrene states that the driver was "wasted" and had urinated on himself. According to Dufrene, the driver was "trying to get his car out."

5

Officer Mayfield testified that on November 4, 2019, he responded to a call about "a single vehicle accident" after a car "crashed into [a] ditch" in Brazoria County. When Mayfield arrived at the scene off FM 2004, at about 6:24 p.m., he spoke to Dufrene, the emergency-assistance caller, who described the driver of the car as a "shorter Hispanic male" who had urinated on himself. She indicated that she believed that the driver of the car was intoxicated. She also showed Mayfield the videotaped recording from her cellular telephone, which showed the car swerving as it drove on the roadway. Mayfield noted that swerving, especially outside of a person's traffic lane, could indicate intoxication as well as "passing when it doesn't appear to be safe" or "lo[sing] . . . control of a vehicle when there doesn't seem to be any particular reason to lose control." After watching Dufrene's videotaped recording, Mayfield believed that it was likely that the driver of the car was intoxicated because the car in the recording was "swerving to the left lane, cross[ing] over the lane multiple times, . . . [and] going over the white line onto the shoulder" before eventually going into the ditch.

As to the scene, Officer Mayfield described the area as a large ditch that "look[ed] like a field" off FM 2004. There was a "tree line" about five feet wide, and then another field behind the tree line. Former RPD Officer J. Beaver, a canine handler who was then Mayfield's partner, came to the scene with her dog. The dog, while tracking, found appellant lying in the field next to FM 2004 under a blanket.

6

Appellant had no explanation as to why he was under a blanket in the field, other than that "his car was stuck." The area where appellant was found could have been accessed by the person who had been in the car that was in the ditch, but it was not a normal place where "you would expect to find somebody [lying] down with a blanket over them."

At the time of the law enforcement officers' search, it was dark outside and difficult to see, and Officer Mayfield opined that it would have been difficult to find appellant without being able to use the dog for tracking. Appellant was the first person that the officers found in the field, and appellant matched the description of the driver of the car in the ditch that Mayfield had received from Dufrene. Appellant was wearing shorts and had urinated on himself. Mayfield could smell the urine. According to Mayfield, appellant, at the time he was found, had bloodshot eyes and slurred speech, and he was unsteady on his feet. Appellant was not wearing shoes and smelled of alcohol.

In speaking with appellant, appellant appeared to "accept[] that [it] was his car in the ditch." Specifically, when Officer Mayfield twice asked appellant if "his car was stuck in the ditch," appellant responded, "sí," both times. (Internal quotations omitted.) And appellant indicated that "his car was stuck." Mayfield believed that appellant "was accepting that he was the driver of [the car]" in the ditch and he "agree[d] that his car [was] stuck." Appellant never denied that the car in the

7

ditch belonged to him. Mayfield did not see any other people at the scene, and appellant did not indicate that he had anyone else with him. Mayfield believed that appellant was the only person in the field that evening.

Officer Mayfield testified that when the officers inventoried the car that was found in the ditch, they found flip flops and a cellular telephone charger in the front seat.[4] Mayfield noted that when he found appellant in the field, he saw that appellant was not wearing shoes, and appellant indicated that his shoes were in the car that was in the ditch. "[A] 16-ounce can of [beer was also found] in the floorboard with liquid still in it." The can "was cold to the touch." Mayfield noted that the actual owner of the car was a woman, Leslie Castillo, and he acknowledged that he did not see appellant driving the car that evening. However, car keys were found on appellant.

Appellant was taken to the RPD station, where another law enforcement officer administered standardized field sobriety tests to appellant. Officer Mayfield, who observed the tests, believed appellant was intoxicated based on his performance. Appellant had "issues" with completing the tests, and Mayfield believed that appellant had lost the normal use of his physical faculties and mental faculties. It would not have been safe for appellant to operate a car. Appellant was

---

[4] A copy of a RPD Vehicle Inventory form dated November 4, 2019 was admitted into evidence at trial.

read the "DIC 24" form, and a blood sample was requested. Mayfield was present at the hospital when appellant's blood sample was taken. Mayfield noted that when law enforcement officers found appellant, he gave them a "false name" and an incorrect date of birth.

During Officer Mayfield's testimony, the trial court admitted into evidence a videotaped recording from Mayfield's "body cam" on the evening of November 4, 2019. On the videotaped recording, Mayfield can be seen speaking with Dufrene, and she tells Mayfield that the driver of the car that ran off the roadway and into the ditch had "pee all over him." Dufrene tells Mayfield that the driver was swerving all over the road and that the driver was a small, Hispanic male. When asked if she knew where the driver was, she responded that he was "down there." Dufrene stated that she did not see any other car stop and pick the driver up. A car can be seen off the side of the roadway in a grassy ditch area.

The videotaped recording further shows Officers Mayfield and Beaver searching through a large grassy area. No nearby houses or persons can be seen. While searching, Mayfield tells Beaver that Dufrene had told him that the driver of the car had "peed himself." After searching for about twenty minutes, the officers find a Hispanic man under a blanket lying in the large grassy area. The man is wearing shorts, but not wearing any shoes. The front of his shorts appear wet. Appellant says that his shoes are in the car and his car is stuck. Appellant has a

9

cellular telephone with him. When Mayfield asks appellant if he has the keys to the car in the ditch, appellant says "maybe," and Mayfield finds a set of car keys in appellant's pocket. Appellant denies drinking "cervezas" when asked by Mayfield. At the RPD station, appellant again says that his shoes are in the car. Appellant, with hand gestures, also appears to indicate that his car went off the roadway.

Officer Beaver testified that she was on duty on November 4, 2019, when she was dispatched, along with her dog, to an area near FM 2004 and FM 523 in Brazoria County. FM 2004 was a two-lane roadway, with an eastbound traffic lane and a westbound traffic lane. Next to FM 2004 was a field about the size of two football fields. Beaver described the area as "rural."

At the scene, Officer Beaver saw a car stuck in a ditch. According to Beaver, Officer Mayfield, who was also at the scene, met with Dufrene, who said that the driver of the car in the ditch was a short, Hispanic male who had urinated on himself. Because the officers could not locate the driver inside the car, they decided to use Beaver's dog to track the driver.[5] Beginning at the car, the dog followed a track in one direction, without losing it, and lead the officers to appellant. Beaver stated that appellant was lying down in tall grass with a blanket over him. Appellant may have

---

[5] Officer Beaver explained during her testimony the method that her dog uses to track a person.

10

been sleeping or just lying down. When appellant stood up, Beaver saw that he had urinated on himself.

Officer Beaver testified that she believed that appellant was intoxicated when she and Officer Mayfield found him on November 4, 2019. His speech was slurred, and the way that he walked and his odor also indicated to Beaver that he was intoxicated. Beaver did not see appellant driving a car that evening.

Lake Jackson Police Department Officer J. Cervantes testified that on November 4, 2019, he helped the RPD with a DWI case. Cervantes was trained in DWI investigations and standardized field sobriety test administration On November 4, 2019, Cervantes administered standardized field sobriety tests to appellant at the RPD station. This included the horizontal gaze nystagmus test, the one-leg-stand test, and the walk-and-turn test. Cervantes read the "DIC 24" form to appellant.

Officer Cervantes explained that while administering the standardized field sobriety tests to appellant, he looked for "clues" or signs of intoxication. According to Cervantes, he observed six clues out of six possible clues on the horizontal gaze nystagmus test, seven clues out of eight possible clues on the walk-and-turn test, and four clues out of four possible clues on the one-leg-stand test. Cervantes also testified that appellant did not complete the walk-and-turn test properly. And appellant had trouble physically performing the walk-and-turn test and the

11

one-leg-stand test. Appellant's performance on the standardized field sobriety tests indicated that he was intoxicated. Appellant did not tell Cervantes that he was going to be physically unable to perform the tests because of any preexisting conditions or injuries.[6]

Officer Cervantes further testified that appellant told him that "he got off of work and then his [car] went off" of the roadway. Appellant also stated that he met friends after work and drank two beers. Appellant did not say that anyone else was in the car with him. At another point, appellant told Cervantes that he had "two or three drinks." According to Cervantes, appellant admitted that he had been drinking earlier in the evening and he "described driving a car and going off the road." Appellant did not tell Cervantes that "somebody else was driving" or that he was "confused as to why he had been arrested." Cervantes did not see appellant driving a car that on November 4, 2019. But he noted that "failing to maintain a single marked lane," "[f]ailing to control speed," "swerving or attempting to pass when unsafe," and "running off the road into a ditch" would be signs of intoxicated driving.

---

[6]  Officer Cervantes noted that appellant told him that he had "a head injury," but appellant wanted to continue with the testing. There was no indication that appellant had recently sustained a head injury, and there was nothing to indicate that Cervantes should not administer the standardized field sobriety tests because of appellant's purported head injury.

12

Samuel Wyllie testified that he was a toxicologist at the Brazoria County Crime Lab and he analyzed appellant's blood sample to determine the alcohol concentration. Wyllie explained that a sample of appellant's blood was taken at 8:28 p.m. on November 4, 2019. Wyllie stated that appellant's blood-alcohol concentration ("BAC") was 0.224 grams of ethanol, plus or minus 0.015 grams, per 100 milliliters of blood. Appellant's BAC was almost three times the legal limit of 0.080 grams of ethanol per 100 milliliters of blood. A copy of Wyllie's alcohol analysis report listing appellant's BAC was admitted into evidence at trial.

## Sufficiency of Evidence

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction because "the State failed to prove beyond a reasonable doubt that . . . [a]ppellant was operating a motor vehicle."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the responsibility of the fact finder to

resolve conflicts fairly in testimony, weigh the evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. That said, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

We note that in reviewing the sufficiency of the evidence, a court must consider both direct and circumstantial evidence and any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (evidence-sufficiency standard of review same for both direct and circumstantial evidence). Circumstantial evidence is just as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Wise*, 364 S.W.3d at 903; *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *See Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13. The jury, as the judge of the facts and credibility of the witnesses, could choose to believe

14

or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

A person commits the offense of DWI, third offense, if "the person is intoxicated while operating a motor vehicle in a public place" and it is shown that he "has previously been convicted . . . two times of any other offense relating to the operating of a motor vehicle while intoxicated."[7]   TEX. PENAL CODE ANN. §§ 49.04(a). 49.09(b).  "Intoxicated" is defined as either (1) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body" or (2) "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2) (internal quotations omitted).  A person "operates" a vehicle when the totality of the circumstances demonstrates that he "took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995).

---

[7]     Here, appellant stipulated that he had previously been convicted of the offense of DWI in trial court cause number 9956751 on January 3, 2000 in County Criminal Court at Law No. 8 of Harris County, Texas and that he had been previously convicted of the offense of DWI in trial court cause number 0989159 on April 12, 2000 in County Criminal Court of Law No. 3 of Harris County.  And those convictions became final before the commission of the offense of DWI alleged in this case.  A copy of appellant's signed stipulation of evidence was admitted into evidence at trial.

15

Courts consider the totality of the circumstances in determining whether sufficient evidence supports a conclusion that a person operated a vehicle. *Id.*; *Kinnett v. State*, 623 S.W.3d 876, 898 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

We note that the State must prove "a temporal link between the . . . defendant's intoxication and his [operation of a vehicle]." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). But a conviction for the offense of driving while intoxicated can be support solely by circumstantial evidence. *Id.*; *see also Enriquez v. State*, No. 01-21-00677-CR, 2022 WL 17981574, at *3 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication).

Here, it is undisputed that a car was driving on FM 2004, a public place, before it went off the roadway into a ditch. *See* TEX. PENAL CODE ANN. § 49.04(a) (person commits offense of DWI if "the person is intoxicated *while operating a motor vehicle in a public place*" (emphasis added)). Appellant, in his briefing, also does not dispute that he was intoxicated on the evening of November 4, 2019 "in a public place." He simply disputes that he was the person driving the car on FM 2004 that ran off the roadway into a ditch.

Dufrene[8] testified that on November 4, 2019, as she drove on FM 2004, at about 5:30 p.m., a car pulled out in front of her from a private driveway. This caused Dufrene to "slam[] on [her] brakes" and maneuver her car into the oncoming traffic lane to avoid hitting the car. Dufrene was able to "get around" the car, and she drove in front of the car, which followed behind her. Dufrene watched the car in her rearview mirror, and she noticed that the car swerved a lot and went "over the line" into the oncoming traffic lane. At a traffic light at FM 2004 and FM 523, the car pulled up next to Dufrene's car, and Dufrene was able to see a man inside the car by himself. Although the car was in a left-hand turn lane, when the traffic light turned green, the car did not turn left, but instead drove in front of Dufrene's car, which was in the traffic lane next to it. The car continued swerving. At one point, the car almost "ran [another car] off" the roadway, and the car "almost sideswiped" another car that was in the oncoming traffic lane. The car then "overcorrected and went off into [a] ditch" to the right of the roadway. The car "went off pretty far" into the ditch to "where [it was] grassy" and got stuck. According to Dufrene, the area around where the car went off the roadway was a big field; there were not any houses nearby.

---

[8] To the extent that appellant, in his briefing, asserts that Dufrene's testimony was "not credible," the credibility of a witness's testimony is not within the scope of our appellate review. *See Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021) (jury is sole judgment of witness's credibility and weight to be assigned to her testimony); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

17

Dufrene then pulled her car onto the shoulder of the roadway. She saw the driver of the car get out. He was a Hispanic male, who was wearing "cutoff shorts." There were not any other people in the car with him. The driver had "[w]et pants," indicating that he had urinated or spilled a drink on himself, and he was staggering as he walked. The driver had his cellular telephone in his hand and was waving it and stumbling around. After Dufrene called for emergency assistance, she waited for law enforcement officers to arrive. During her calls for emergency assistance, Dufrene told the emergency assistance operator that "there [was] a guy in a ditch" on the right side of FM 2004 going toward Richwood. Dufrene described the driver as "wasted" and stated that he had urinated on himself.

Dufrene testified that while she waited for law enforcement officers, she did not see anyone come pick up the driver of the car. She also did not see another car stop and a person exit and "just start wandering around the ditch." Dufrene did not see "another random person wandering around" the area that night, other than the driver of the car. Dufrene noted that between the time the driver drove his car into the ditch and the time that law enforcement officers arrived, the driver never left the scene with anyone else. When officers arrived, Dufrene told them that no one had picked up the driver, and when the officers asked her where the driver was, Dufrene told them, "[h]e's got to be down there somewhere." Dufrene testified that she was certain that no one else came to the scene other than the law enforcement officers

that night. *See Walsh v. State*, No. 06-15-00059-CV, 2015 WL 8477273, at *3–4 (Tex. App.—Texarkana Dec. 10, 2015, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to support finding defendant was driver of truck where witness testified that he only saw one person in truck, that person entered on driver's side and was "a short man," which matched description of defendant who was seen near truck by law enforcement officer); *MacNeil v. State*, No. 08-10-00161-CR, 2011 WL 3849419, at *3 (Tex. App.—El Paso Aug. 31, 2011, no pet.) (not designated for publication) (holding jury could have rationally found beyond reasonable doubt that defendant was operating motor vehicle where witness saw defendant in car about two minutes after accident occurred and did not see anyone leaving scene of accident).

Officer Mayfield testified that on November 4, 2019, he responded to a call about "a single vehicle accident" after a car "crashed into [a] ditch" in Brazoria County. When Mayfield arrived at the scene on FM 2004, at about 6:24 p.m., he spoke to Dufrene, who described the driver of the car as a "shorter Hispanic male" who had urinated on himself.[9] Dufrene indicated that she believed that the driver was intoxicated, and she showed Mayfield a videotaped recording from her cellular

---

[9]    In the videotaped recording from Officer Mayfield's "body cam," Dufrene tells Mayfield that the driver of the car that ran off the roadway had "pee all over him." She further states that the driver was swerving all over the roadway and the driver was a small, Hispanic male. Dufrene tells Mayfield that she did not see any other car stop and pick the driver up.

telephone showing the car swerving. After watching Dufrene's videotaped recording, Mayfield believed that it was likely that the driver of the car was intoxicated because the car in the recording was "swerving to the left lane, cross[ing] over the lane multiple times, . . . [and] going over the white line onto the shoulder" before eventually going into the ditch.

After speaking with Dufrene, Officer Mayfield and his partner, Officer Beaver, used Beaver's dog to track the driver of the car. The dog found appellant lying in the nearby field under a blanket. *See Clayton*, 235 S.W.3d at 780 (fact finder "may draw an inference of guilt from the circumstance of flight"); *Synder v. State*, No. 02-13-00065-CR, 2014 WL 6494167, at *2 n.4 (Tex. App.—Fort Worth Nov. 20, 2014, no pet.) (mem. op., not designated for publication) (flight and hiding "may both indicate consciousness of guilt").

According to Officer Mayfield, the area where appellant was found could have been accessed by someone who had been in the car in the ditch, but it was not a normal place where "you would expect to find somebody [lying] down with a blanket over them." Appellant was the first person that Mayfield and Officer Beaver found in the field, and appellant matched the description of the driver that Mayfield had received from Dufrene. *See Robbins v. State*, No. 02-20-00043-CR, 2021 WL 4621764, at *2 (Tex. App.—Fort Worth Oct. 7, 2021, pet. ref'd) (mem. op., not designated for publication) (evidence sufficient to establish defendant was operating

20

motor vehicle where defendant matched "911 caller's description of the driver"); *Hines v. State*, 383 S.W.3d 615, 623–24 (Tex. App.—San Antonio 2012, pet. ref'd) (evidence sufficient to prove beyond reasonable doubt that defendant was operating motor vehicle where witness described person she saw coming out of driver's side of car and stated she did not see anyone else leave scene and law enforcement officer testified defendant was only person at scene connected to crashed vehicle). Appellant was wearing shorts and had urinated on himself. Mayfield could smell the urine. Appellant also had bloodshot eyes and slurred speech, and he was unsteady on his feet. He was not wearing shoes and smelled of alcohol. Appellant indicated that his shoes were in the car that was in the ditch. Mayfield did not see any other people at the scene that evening, and he believed that appellant was the only person in the field. According to Mayfield, when officers inventoried the car that was found in the ditch, they found flip flops in the front seat and a cold can of beer "in the floorboard with liquid still in it." Car keys were found in appellant's pocket. *See Ward v. State*, No. 2-08-283-CR, 2009 WL 4755181, at *3 (Tex. App.—Fort Worth Dec. 10, 2009, pet. ref'd) ("[T]he State may prove the identity of a vehicle's driver by circumstantial evidence.").

Officer Mayfield further testified that in speaking with appellant, appellant appeared to be "accepting that [it] was his car in the ditch." Specifically, when Mayfield twice asked appellant if "his car was stuck in the ditch," appellant

21

responded, "sí," both times. (Internal quotations omitted.) And appellant indicated that "his car was stuck." Mayfield believed that appellant "was accepting that he was the driver of [the car]" in the ditch and he "agree[d] that his car [was] stuck." Appellant never denied that the car in the ditch belonged to him. *See Freeman v. State*, No. 2-08-079-CR, 2009 WL 579292, at \*2–3 (Tex. App.—Fort Worth Mar. 5, 2009, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to prove beyond reasonable doubt that defendant was driver of wrecked vehicle where he was only person found in vicinity and he told law enforcement officers he had "just been in an accident"); *Sweeten v. State*, No. 05-01-00483-CR, 2002 WL 980675, at \*2 (Tex. App.—Dallas May 14, 2002, no pet.) (not designated for publication) (although law enforcement officers did not see defendant driving truck, holding evidence sufficient to show defendant operated motor vehicle where defendant was only person near truck at scene and defendant admitted he drove truck onto guardrail).

Officer Beaver testified that on November 4, 2019, she, along with her dog, were dispatched to "a rural area" near FM 2004 and FM 523. At the scene, Beaver saw a car in the ditch. Officer Mayfield met with Dufrene, a witness, who said that the driver of the car in the ditch was a short, Hispanic male who had urinated on himself. Because the driver of the car was not in his car when the officers arrived, they decided to use Beaver's dog to track the driver.

22

Officer Beaver explained that, starting at the car, the dog followed a track in one direction, without losing it, and lead the officers to appellant. *See Hernandez v. State*, 13 S.W.3d 78, 80–81 (Tex. App.—Texarkana 2000, no pet.) (holding evidence sufficient to show defendant was driver of truck where defendant was only person walking near wrecked truck, even though defendant told law enforcement officers that he was not driver and no witness testified that they saw defendant driving truck); *see also Gonzales v. State*, No. 07-17-00320-CR, 2019 WL 1414183, at *3 (Tex. App.—Amarillo Mar. 28, 2019, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to show defendant was motorcycle driver where, although there was "no direct, positive identification that [defendant] was the driver at the crash site," "a dog trained in tracking suspects was able to locate [defendant] hiding" near crash site).

According to Officer Beaver, appellant was lying down in tall grass with a blanket over him when the officers encountered him. *See Clayton*, 235 S.W.3d at 780 (fact finder "may draw an inference of guilt from the circumstance of flight"); *Synder*, 2014 WL 6494167, at *2 n.4 (flight and hiding "may both indicate consciousness of guilt"). When appellant stood up, Beaver saw that appellant had urinated on himself. *See Ward*, 2009 WL 4755181, at *3 ("[T]he State may prove the identity of a vehicle's driver by circumstantial evidence."). Beaver stated that

23

she believed that appellant was intoxicated because his speech was slurred, and his odor indicated that he was intoxicated.

Finally, Officer Cervantes, who administered standardized field sobriety tests to appellant, testified that appellant told him that "he got off of work and then his [car] went off" of the roadway. Appellant also stated that he met friends after work and drank two beers. Appellant did not say that anyone else was in the car with him. Additionally, appellant told Cervantes that he had "two or three drinks." According to Cervantes, appellant admitted that he had been drinking earlier in the evening and he "described driving a car and going off the road." Appellant did not tell Cervantes that "somebody else was driving" or that he was "confused as to why he had been arrested." *See Harrell v. State*, 620 S.W.3d 910, 914–15 (Tex. Crim. App. 2021) (holding evidence sufficient to support defendant's DWI conviction while considering all admitted evidence, including defendant's extrajudicial confession); *Gutierrez v. State*, No. 04-21-00248-CR, 2022 WL 2135540, at *3–5 (Tex. App.— San Antonio June 15, 2022, no pet.) (mem. op., not designated for publication) (same); *Freeman*, 2009 WL 579292, at *2–3 (holding evidence sufficient to prove beyond reasonable doubt that defendant was driver of wrecked vehicle, where he was only person found in vicinity and he told law enforcement officers he had "just been in an accident").

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have determined beyond a reasonable doubt that appellant was intoxicated while operating a motor vehicle in a public place.

We note that appellant, in his briefing, appears to rely on the *corpus delicti* rule to argue that the evidence is legally insufficient to support his conviction because there is no evidence to identify him as the driver of the car that Dufrene saw erratically driving and going off the roadway into the ditch without his admissions to the law enforcement officers. Appellant's argument misunderstands the *corpus delicti* rule. *See, e.g.*, *Gutierrez*, 2022 WL 2135540, at *4 ("[T]he identity of the perpetrator is not part of *the corpus delicti* [of the offense].").

"In cases involving extrajudicial confessions when 'beyond a reasonable doubt' is the burden, not only must the evidence be legally sufficient under [the] *Jackson* [legal-sufficiency standard of review] but also it must tend to show the *corpus delicti* of the offense." *Harrell*, 620 S.W.3d at 914. "To determine if the *corpus delicti* of an offense is shown, an appellate court must examine all the evidence, except the defendant's extrajudicial confession, to see if it shows that the essential nature of the charged crime was committed by someone." *Id.* (internal quotations omitted). "The purpose of the *corpus delicti* rule is to prevent convictions based on confessions to imaginary crimes." *Id.* "The analysis focuses on only

25

whether someone committed [a] crime, but it is not as rigorous as the *Jackson* legal[-]sufficiency [standard of] review." *Id.*

"The *corpus delicti* of DWI is that someone operated a motor vehicle in a public place while intoxicated." *Id.*; *see also McCann v. State*, 433 S.W.3d 642, 646 (Tex. App.—Houston [1st Dist.] 2014, no pet.). "In a *corpus delicti* analysis, the extrajudicial confession of a defendant is not considered, and identity need not be proven." *Harrell*, 620 S.W.3d at 914. Stated another way, "identity is not part of the *corpus delicti* of DWI." *Id.* at 914–15 (proof that defendant was person operating motor vehicle not part of *corpus delicti* of DWI); *see also Gribble v. State*, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990) ("It need not be corroborated as to the person who committed [the offense], since identity of the perpetrator is not a part of the *corpus delicti* and may be established by an extrajudicial confession alone." (internal footnote omitted)). Here, considering the above evidence, absent appellant's statements to the law enforcement officers, the evidence still tends to show that "someone operated a motor vehicle in a public place while intoxicated." *See Harrell*, 620 S.W.3d at 914–15; *see also Salazar v. State*, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002) (holding *corpus delicti* rule satisfied if some evidence exists outside of extrajudicial confession which, considered alone or in connection with confession, shows that offense occurred).

Here, we hold that the *corpus delicti* rule has been satisfied and the evidence is legally sufficient under the *Jackson* legal-sufficiency standard of review to support appellant's conviction for the offense of DWI, third offense. *See Harrell*, 620 S.W.3d at 913–15.

We overrule appellant's sole issue.

## Modification of Judgment

Here, the trial court's written judgment does not accurately comport with the record in this case in that it states "N/A" meaning "not applicable" in regard to appellant's pleas to the "1st [e]nhancement [p]aragraph" and the "2nd [e]nhancement [p]aragraph" and in regard to the jury's "[f]inding on 1st [e]nhancement [p]aragraph" and the jury's "[f]inding on 2nd [e]nhancement [p]aragraph." *See Dromgoole v. State*, 470 S.W.3d 204, 226–27 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (judgment incorrectly reflected trial court's finding on enhancement paragraph was "n/a," meaning "not applicable" (internal quotations omitted)). The record, however, shows that appellant pleaded "[t]rue" to the "1st [e]nhancement [p]aragraph" and the "2nd [e]nhancement [p]aragraph" and the jury's "[f]inding[s] on 1st [e]nhancement [p]aragraph" and "2nd [e]nhancement [p]aragraph" were "true." We also note that the trial court's judgment misspells one of appellant's aliases as "Weflredo Portillo" instead of "Welfredo Portillo."

27

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when [they] ha[ve] the necessary data and information to do so[] or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd)). This is true no matter who, or if anyone, has called the matter to the attention of the appellate court. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Dromgoole*, 470 S.W.3d at 226; *see also Asberry*, 813 S.W.2d at 529–30 ("The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court.").

Accordingly, we modify the trial court's judgment to state "True" in regard to appellant's pleas to the "1st [e]nhancement [p]aragraph" and the "2nd [e]nhancement [p]aragraph." We further modify the trial court's judgment to state "True" in regard to the jury's "[f]inding on 1st [e]nhancement [p]aragraph" and the jury's "[f]inding on 2nd [e]nhancement [p]aragraph." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *see also Goffney v. State*, No. 01-19-00282-CR, 2020 WL 7349496, at *13 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, pet. ref'd) (mem. op., not designated for publication). Finally,

28

we modify the judgment to correct the spelling of appellant's last listed alias to "Welfredo Portillo."

## Conclusion

We affirm the judgment of the trial court as modified.


Julie Countiss
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).